MARIA K. SMITH v. J. H. SMITH et al.

1. ANNUITY. *Mortgage.* When two persons agree to pay an equal annuity to a third person, each securing the payment of his moiety by mortgage of realty, with a stipulation that at the death of the annuitant and the payment of funeral expenses, any part of the annuity remaining should be equally divided between them, the annuitant is entitled to the annuity from each, and to enforce the mortgage against either, and it is no defense that the annuitant has failed to make the other party pay, the right to the surplus, if any, only accruing after the death of the annuitant.

2. SAME. *Revivor. Personal representative.* After a decree for the arrears of an annuity rendered in this State in favor of a non-resident, upon a contract made in another State, if the annuitant die pending an appeal to this court, the suit may be revived by the personal representative of the annuitant, and such representative may be appointed by the county court of the county in which the decree was recovered.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

T. W. Brown for complainant.

H. C. KING for defendant.

COOPER, J., delivered the opinion of the court.

The petition for rehearing in this case, which was decided from the bench, states no fact overlooked at the hearing, or any new principle of law, and might therefore be dismissed under our practice.   If we do so far yield to the earnestness of counsel as to state the facts and our conclusions, it is out of deference to counsel and client rather than because the case requires it.

On November 10, 1874, Abram Smith died in Shelby county, Ky., leaving a widow, the complainant, Maria K. Smith, a son, G. W. Smith, by her, and another son, the defendant, J. H. Smith, by a former wife, surviving him, as his heirs and distributees.   He made a will devising his residence and furniture therein to his widow for life, and then to his son, G. W. Smith, in fee, dying intestate as to his other property.   On November 16, 1874, an agreement was entered into between the widow and the two children, by which a certain fund was settled in trust for the benefit of the widow for life, to be equally divided between the children at her death.   On December 28, 1874, the defendant, J. H. Smith conveyed his interest in this fund to his wife, the defendant, Emily J. Smith.   On November 20, 1875, all of these parties entered into an agreement in writing, by which it was agreed that the *corpus* of the fund mentioned in the previous agreement should be divided between G. W. Smith and Emily J. Smith, in consideration whereof these

parties undertook each to pay quarterly an annuity, for the "support and maintenance" of the widow during life, of $265.56, and at her death, and after the funeral expenses are paid, should there be any of said annuity remaining, the same to be equally divided between G. W. Smith and E. J. Smith. It was further provided that if the annuity should prove insufficient to support and maintain the widow in comfort, and pay her burial expenses, the deficit was to be supplied by contribution by said G. W. and E. J. Smith and J. H. Smith *pro rata* upon the sum received by them under the division of the fund. It was further agreed that G. W. Smith, J. H. Smith and Emily J., his wife, should give to Maria K. Smith, the widow, a mortgage on real estate as security for the faithful performance of all the stipulations on their part contained in the agreement. G. W. Smith did accordingly execute to the widow a mortgage on realty in Kentucky, and J. H. Smith and Emily J., his wife, executed a similar mortgage on realty in Memphis, Tenn., where they resided. The defendants, Smith and wife, continued to pay the annuity until August 20, 1878, when a quarterly payment fell due, and was not paid. Since that time they have not paid any part of the annuity.

The bill was filed February 26, 1879, by the widow against J. H. Smith and wife, and the trustee in their mortgage or trust deed, to enforce payment of the annuity, and for this purpose to foreclose the mortgage, if necessary. Upon final hearing the chancellor granted the relief sought, and the Referees recommend

an affirmance of the decree. Smith and wife except to the report.

The defendants filed a joint answer to the bill, in which they admitted the agreement, the execution of the mortgage, and the failure and refusal to pay as charged in the bill. The defense set up was that the complainant had not required her son, G. W. Smith, to execute a mortgage to secure his part of the annuity, nor compelled him to pay the annuity. The proof is that G. W. Smith did execute a mortgage, as he had agreed to do, and he himself deposes that he paid his part of the annuity in settling, as the agent of his mother, her accounts and expenses. The chancellor and Referees have found that the facts do not warrant the defense, and we cannot say that they have erred in so finding, although there is some evidence tending to disprove the payment of the annuity, for a part of the time, by G. W. Smith, but rather inferentially than directly.

Upon the assumption that G. W. Smith, has not paid his part of the annuity, the argument on behalf of the defendants is, that the agreement provides for a division between G. W. and E. J. Smith of any of the annuity remaining at the death of the widow, after the funeral expenses are paid, and, therefore, the defendants have the right, as a condition precedent to the performance of their part of the contract, to require the annuitant to collect the other part of the annuity for their benefit in a possible contingency. It is not pretended that it is so nominated in the bond. On the contrary, the agreement provides for the prob-

Smith *v.* Smith.

able event that the annuity may not be sufficient for the support of the annuitant. And the proof is clear that she had no other income, and the whole annuity was needed for her decent support. She had the right during her life to receive, and consequently to enforce, the collection of the annuity. The right of the other contracting parties to any surplus, after the payment of burial expenses, could only commence after the death of the annuitant. It is a matter to be settled between the administrator of the annuitant and the other parties to the agreement. Very probably, when the right accrues, the defendants may hold G. W. Smith to an account for his share of the annuity, and be subrogated to the rights of the annuitant under G. W. Smith's mortgage. They cannot in this suit, to which G. W. Smith is no party, and where the annuitant has died since the recovery in the chancery court and the appeal to this court, have a determination of the question.

Both upon the facts and the law, therefore, it is clear that defendants have no standing upon the merits.

The very learned counsel of the defendants insists, the complainant having died since the decree in the court below and the appeal to this court, that the action cannot be revived. " The complainant," he says, "not dying in this State, and never having lived here since the making of the contract, the con- tract being also foreign to this State, the action necessarily died with her, and did not pass by succession." He cites no authority, and submits no argument in support of the position. By the North Carolina act.

Smith *v.* Smith.

of 1794, antedating the organization of the State government, always in force and brought into the Code, sec. 2854, it is provided: "No appeal or writ of error in any cause or court shall abate by the death of either plaintiff or defendant, but may be revived against the heir or personal representative." And by the act of 1836, ch. 77, brought into the Code, sec. 2846: "No civil actions commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived." It is obvious, therefore, that by plain and express statute neither the cause of action nor the appeal abated by the death of the complainant. And by statutes brought into the Code, sec. 2203, it has long been provided that administration may be granted upon the estate of a person who resided, at the time of his death, in some other State or territory of the Union, or in a foreign country, by the county court of any county in the State, where the deceased had any goods, chattels or assets, or any estate real or personal, at the time of his death, or where the same may be when letters are applied for; where any debtor of the deceased resides; or where any suit is to be brought, prosecuted or defended in which said estate is interested. And, without any statute, the doctrine of the common law in relation to *bona notabilia* would authorize administration in this case: *Swancy* v. *Scott*, 9 Hum., 329. The point made by the learned counsel is, consequently, not well taken.

The petition for rehearing is refused with costs.